1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   COLTON JAMES ROOD,                      No.  2:20-cv-0271 KJM AC P

12              Plaintiff,

13        v.                                 ORDER AND FINDINGS &
                                             RECOMMENDATIONS
14   ISAAC LOCKWOOD, et al.,

15              Defendants.

16

17        Plaintiff is a former county and current state prisoner proceeding pro se with a civil rights

18   action pursuant to 42 U.S.C. § 1983.  Currently before the court is defendants' motion for

19   summary judgment.  ECF No. 63.

20   I.   Procedural History

21        This case proceeds on plaintiff's first amended complaint.  ECF No. 11.  On screening, the

22   court found that plaintiff had stated cognizable claims for excessive force against defendants

23   Lockwood, Vangerwen, Hurte, and Jurkiewicz; deliberate indifference against Lockwood and

24   Vangerwen; retaliation against Lockwood, Hurte, and Jurkiewicz; and unconstitutional conditions

25   of confinement against Vangerwen.  ECF No. 17.  No other claims were sufficiently pled.  Id.

26   Plaintiff was given the option of proceeding on the first amended complaint as screened or

27   amending the complaint.  Id. at 8.  He elected to proceed on his first amended complaint as

28   screened and voluntarily dismissed the non-cognizable claims.  ECF No. 21.  After the close of

1  discovery, defendants moved for summary judgment (ECF No. 63) which plaintiff opposes (ECF

2  No. 71).

3      II.      Plaintiff's Allegations

4          Plaintiff alleges that while he was a pretrial detainee at the Shasta County Jail, defendants

5  Lockwood and Vangerwen assaulted him during two escorts that took place on October 11, 2019,

6  and that after the first assault they told medical staff not to evaluate plaintiff's injuries for

7  treatment.  ECF No. 11 at 4-6.  He was assaulted again by defendants Vangerwen, Hurte, and

8  Jurkiewicz on November 21, 2019.  Id. at 7-8.  After plaintiff filed several lawsuits against jail

9  deputies, Lockwood, Hurte, and Jurkiewicz "made a habit" of destroying his property and legal

10 work in retaliation for his litigiousness.  Id. at 8-9.  Plaintiff also observed Vangerwen chip feces

11 particles onto his food tray, remove portions of food, and tell inmate porters to spit on plaintiff's

12 food.  Id. at 9.

13     III.     Motion for Summary Judgment

14          A.      Defendants' Arguments

15         Defendants move for summary judgment on plaintiff's excessive force claims on the

16 grounds that their actions were objectively reasonable and the claim against Lockwood is barred

17 by Heck v. Humphrey, 512 U.S. 477 (1994).  ECF No. 63 at 20-25.  They further argue that

18 plaintiff's remaining claims are barred due to his failure to exhaust all available administrative

19 remedies and are unsupported by the evidence.  Id. at 18-20, 25-31.  Alternatively, defendants

20 argue that they are entitled to qualified immunity.  Id. at 31-33.

21          B.      Plaintiff's Response

22          At the outset, the court notes that plaintiff has failed to comply with Federal Rule of Civil

23 Procedure 56(c)(1)(A), which requires that "[a] party asserting that a fact . . . is genuinely

24 disputed must support the assertion by . . . citing to particular parts of materials in the record."

25 Plaintiff has also failed to file a separate document in response to defendants' statement of

26 undisputed facts that identifies which facts are admitted and which are disputed, as required by

27 Local Rule 260(b).

28          "Pro se litigants must follow the same rules of procedure that govern other litigants."

1   King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987) (citation omitted), overruled on other grounds,

2   Lacey v. Maricopa County, 693 F.3d 896, 928 (9th Cir. 2012) (en banc).  However, it is well-

3   established that district courts are to "construe liberally motion papers and pleadings filed by *pro*

4   *se* inmates and should avoid applying summary judgment rules strictly."  Thomas v. Ponder, 611

5   F.3d 1144, 1150 (9th Cir. 2010).  The unrepresented prisoner's choice to proceed without counsel

6   "is less than voluntary" and they are subject to "the handicaps . . . detention necessarily imposes

7   upon a litigant," such as "limited access to legal materials" as well as "sources of proof."

8   Jacobsen v. Filler, 790 F.2d 1362, 1364 n.4 (9th Cir. 1986) (alteration in original) (citations and

9   internal quotation marks omitted).  Inmate litigants, therefore, should not be held to a standard of

10  "strict literalness" with respect to the requirements of the summary judgment rule.  Id. (citation

11  omitted).

12        Accordingly, the court considers the record before it in its entirety despite plaintiff's

13  failure to be in strict compliance with the applicable rules.  However, the court will only consider

14  those assertions in the opposition which have evidentiary support in the record.

15        In his opposition, plaintiff argues that defendants' actions in relation to the force used

16  against him were not objectively reasonable and Heck does not bar the excessive force claim

17  against Lockwood.  ECF No. 71 at 2-5.  With respect to his other claims, he argues that he did

18  exhaust available administrative remedies and the evidence supports his claims.  Id. at 6-11.

19  Finally, plaintiff asserts that defendants are not entitled to qualified immunity for any of his

20  claims against them.  Id. at 11-12.

21        IV.      Legal Standards for Summary Judgment

22        Summary judgment is appropriate when the moving party "shows that there is no genuine

23  dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R.

24  Civ. P. 56(a).  Under summary judgment practice, "[t]he moving party initially bears the burden

25  of proving the absence of a genuine issue of material fact."  In re Oracle Corp. Sec. Litig., 627

26  F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  The

27  moving party may accomplish this by "citing to particular parts of materials in the record,

28  including depositions, documents, electronically stored information, affidavits or declarations,

stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

"Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323. In such a circumstance, summary judgment should "be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c). The opposing party must demonstrate that the fact in contention is material, i.e., a fact "that might affect the outcome of the suit under the governing law," and that the dispute is genuine, i.e., "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

4

1    trial." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987)

2    (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968). Thus, the

3    "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see

4    whether there is a genuine need for trial." Matsushita, 475 U.S. at 587 (citation and internal

5    quotation marks omitted).

6      "In evaluating the evidence to determine whether there is a genuine issue of fact, [the

7    court] draw[s] all inferences supported by the evidence in favor of the non-moving party." Walls

8    v. Cent. Contra Costa Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011) (citation omitted). It is the

9    opposing party's obligation to produce a factual predicate from which the inference may be

10    drawn. See Richards v. Nielsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to

11    demonstrate a genuine issue, the opposing party "must do more than simply show that there is

12    some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586 (citations

13    omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the

14    non-moving party, there is no 'genuine issue for trial.'" Id. at 587 (quoting First Nat'l Bank, 391

15    U.S. at 289).

16      Defendants served plaintiff with notice of the requirements for opposing a motion

17    pursuant to Rule 56 of the Federal Rules of Civil Procedure two days after serving their motion

18    for summary judgment. ECF No. 65; see Klingele v. Eikenberry, 849 F.2d 409, 411 (9th Cir.

19    1988) (pro se prisoners must be provided with notice of the requirements for summary judgment);

20    Rand v. Rowland, 154 F.3d 952, 960 (9th Cir. 1998) (en banc) (movant may provide notice).

21      V.     Evidentiary Issues

22         A.     Defendants' Request for Judicial Notice

23      Defendants' motion includes a request that the court take judicial notice of the certified

24    Shasta County Superior Court felony docket and minutes from The People of the State of

25    California v. Colton James Rood, MC RD CRF 190007188. ECF No. 63-1. "The court may

26    judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known

27    . . . or (2) can be accurately and readily determined from sources whose accuracy cannot

28    reasonably be questioned." Fed. R. Evid. 201(b). Accordingly, the request for judicial notice will

be granted.

        **B.**    Plaintiff's Motion for Relief Under Federal Rule of Civil Procedure 56(d)

In his opposition, plaintiff asserts that "defendants are simply holding back the incriminating video/audio evidences [sic] they have access to" in order to discredit his version of events. ECF No. 71 at 8-9. He requests "more discovery" and an "order to compel evidence" in order to prove his case. Id.

Federal Rule of Civil Procedure 56(d) provides that "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." However, "[a] movant cannot complain if it fails diligently to pursue discovery before summary judgment." Mackey v. Pioneer Nat'l Bank, 867 F.2d 520, 524 (9th Cir. 1989) (citations omitted).

Discovery in this case closed on August 26, 2022. ECF No. 56. Over a month after the close of discovery, plaintiff requested that discovery be re-opened on the ground that documents were withheld from him. ECF No. 61. In denying that motion, the court noted that the parties had approximately fifteen months in which to complete discovery and that plaintiff failed to explain why he had been unable to complete discovery within that time or establish grounds for re-opening discovery. ECF No. 62. Plaintiff once again fails to provide any reason as to why he was unable to file a motion to compel or otherwise obtain the discovery he now seeks within the time previously provided. Accordingly, plaintiff has not demonstrated that he was diligent in pursuing the discovery he now seeks to compel and the request for relief under Rule 56(d) will be denied.

    **VI.**    Material Facts

Plaintiff did not separately respond to Defendants' Statement of Undisputed Facts (DSUF), and the facts are therefore deemed undisputed except as otherwise discussed.

        **A.**    The Parties

At all relevant times, plaintiff was a pretrial detainee at the Shasta County Jail where defendants were employed. DSUF (ECF No. 63-2) ¶ 1; ECF No. 11 at 2, 4.

1

   B.   October 11, 2019

2      On October 11, 2019, plaintiff had two professional visits that required him to come out of

3  his cell.  DSUF ¶¶ 2, 32; ECF No. 11 at 4-5.[1]  When plaintiff was called for his first visit, he

4  asked to be secured with waist chains.  DSUF ¶ 3; ECF No. 11 at 4.  At this point, the parties'

5  versions of events diverge.

6      Plaintiff asserts that rather than providing waist chains, Lockwood, with the assistance of

7  other deputies, held him on the ground and wrenched his arms back to apply handcuffs while

8  "yelling at him that he was a 'peice [sic] of shit.'"  ECF No. 4 at 9; ECF No. 11 at 5.  During the

9  escort, when plaintiff was in handcuffs and ankle restrains, Lockwood proceeded to shove

10 plaintiff into doors and walls.  Id.  Defendants told medical not to evaluate or assess the injuries

11 that plaintiff received during the escort, and plaintiff was forced to re-set his shoulder—which

12 had been dislocated during the assault—by himself.[2]  Id.  Upon returning plaintiff to his cell,

13 Lockwood and Vangerwen threw plaintiff into his concrete bunk and bent plaintiff's arms,

14 fingers, and legs to the point that they felt like they would break.  Id.

15     When plaintiff was called for another professional visit later that day, Lockwood and

16 Vangerwen assaulted him again by throwing him into walls and doors and threw him to the

17 ground upon entering his cell.  ECF No. 4 at 9-10; ECF No. 11 at 5.  While plaintiff was on the

18 ground and still fully restrained, Lockwood and Vangerwen beat his head against the floor and

19 struck him in the ribs, back, head, and neck, causing him to lose consciousness.  ECF No. 4 at 10;

20 ECF No. 11 at 5-6.

21

22 [1] Plaintiff's first amended complaint was signed under penalty of perjury (ECF No. 11 at 11) and
   "[a] plaintiff's verified complaint may be considered as an affidavit in opposition to summary
23 judgment if it is based on personal knowledge and sets forth specific facts admissible in
   evidence."  Lopez v. Smith, 203 F.3d 1122, 1132 n.14 (9th Cir. 2000) (en banc) (citation
24 omitted).  Plaintiff also submitted several sworn declarations in support of a motion for
   preliminary injunction (ECF No. 4 at 4-13) and his opposition to defendants' motion for summary
25 judgment was also signed under penalty of perjury (ECF No. 71 at 12) and will be relied upon as
   appropriate.
26 [2] Although the complaint is vague as to when in the sequence of events defendants told medical
   not to evaluate him in relation to the first incident on October 11, 2019, his declaration states that
27 defendants would not let him be evaluated when he was taken to medical before being returned to
   his cell.  ECF No. 4 at 9.
28

Defendants assert that after being called for his first visit, plaintiff told deputies that he would not leave the housing unit without belly chains even though his movement status did not require chains.  DSUF ¶¶ 3-4.  He further told deputies that he was unable to put his hands behind his back and that there would be a problem if he did not get belly chains.  DSFU ¶ 5.  Upon exiting his cell, plaintiff walked up the stairs in the day room near the top of the stairwell.  DSUF ¶ 6. Defendant Lockwood and another deputy entered the housing unit and Lockwood ordered plaintiff to go down the stairs and exit the housing unit for his visit.  DSUF ¶ 8.  Plaintiff did not follow the commands and instead took a bladed stance and remained at the top of the stairs saying he would not go anywhere without belly chains.  DSUF ¶ 9.  After issuing two additional orders to turn around and go down the stairs, which plaintiff ignored, Lockwood reached out a hand to turn plaintiff around and escort him down the stairs.  DSUF ¶¶ 10-11.  As Lockwood reached for plaintiff's shoulder, plaintiff grabbed Lockwood's arm and, after a struggle, pulled Lockwood down the stairs resulting in both plaintiff and Lockwood landing on the floor at the bottom of the staircase.[3]  DSUF ¶¶ 12-13.  Plaintiff pled guilty to a violation of Penal Code § 245(c), assault on a peace officer by means likely to produce great bodily injury, for which he is currently serving a six-year prison sentence.  DSUF ¶¶ 76-77; ECF No. 71 at 3-4.

After reaching the bottom of the staircase, Lockwood grabbed plaintiff's right arm to keep plaintiff's clenched fist away from him while another deputy attempted to gain control of plaintiff's legs, which he was kicking.  DSUF ¶¶ 14-15.  Lockwood and the other deputy struggled to gain control of plaintiff, who continued thrashing and attempting to get away.  DSUF ¶¶ 16-20.  Eventually, Lockwood regained control of plaintiff and placed him on the floor on his stomach until other deputies arrived on the scene.  DSUF ¶¶ 21-24.  Once additional deputies including Vangerwen, arrived, plaintiff was handcuffed and escorted to the medical unit.  DSUF ¶¶ 26.  Plaintiff was evaluated by a physician assistant and escorted back to his cell after it was determined that he had not sustained any injuries.  DSUF ¶¶ 27-28.

_____

[3]  Plaintiff does not dispute that he and Lockwood had an altercation that led to them both falling down the staircase, but asserts that he was acting in self-defense, the altercation is not part of the lawsuit, and his complaint is based on what occurred after they fell down the stairs.  ECF No. 71 at 4.

Once plaintiff was back in his cell, Lockwood placed plaintiff on his stomach on the cell floor, removed plaintiff's handcuffs, and secured the door after all deputies had exited the cell. DSUF ¶¶ 29-30.  Immediately after the door closed, plaintiff approached the door and said to Lockwood, "I told you I'd get you.  You got any kids?"  DSUF ¶ 31.

Later that day, plaintiff was taken to an interview room and asked if he would like to make a statement about the earlier incident, which he declined to do.  DSUF ¶ 32.  Vangerwen and other deputies then escorted plaintiff back to the housing unit.  DSUF ¶ 33.  However, during the escort, plaintiff began attempting to pull out of the deputies' control and ignored commands to stop tensing and comply with the escort.  DSUF ¶¶ 33-35.

Upon returning to his cell, Vangerwen twice ordered plaintiff to kneel on the bed, but he failed to comply and instead continued to tense up and push back on the deputies.  DSUF ¶¶ 36-37.  Vangerwen utilized downward pressure on plaintiff's shoulder and ordered him to lay on the bed while other deputies maintained control of his arm and legs.  DSUF ¶ 38.  Plaintiff continued to tense his arms while his handcuffs were removed and Vangerwen lost control of plaintiff's left arm, which he immediately tucked under his stomach, and ignored orders to stop resisting and give Vangerwen his arm.  DSUF ¶¶ 38-40.  Due to plaintiff's continued resistance, Vangerwen delivered three closed fist strikes to plaintiff's back to achieve compliance and ordered plaintiff to place his hands on top of his head and remain on the floor while the deputies exited the cell, which they did without further incident.  DSUF ¶¶ 41-43.  When Vangerwen's asked plaintiff if he needed to go to medical, plaintiff declined.  DSUF ¶ 44.

C.   November 21, 2019

On November 21, 2019, plaintiff observed an incident between deputies and another inmate in plaintiff's housing unit, which led to an encounter between plaintiff and defendants Hurte, Vangerwen, and Jurkiewicz.  DSUF ¶¶ 45-60; ECF No. 11 at 7-8.  The parties' versions of the events differ, as outlined below.

Plaintiff asserts that he was silently observing eight staff members—including Hurte, Vangerwen, and Jurkiewicz—beat another inmate outside his cell window.  ECF No. 4 at 11; ECF No. 11 at 7.  When they noticed plaintiff watching, staff members began to beat plaintiff's

1   window with batons, telling him to look away.  Id.  Hurte, Vangerwen, and Jurkiewicz then

2   entered plaintiff's cell and began assaulting him.  ECF No. 4 at 11-12; ECF No. 11 at 7.  Hurte

3   and Vangerwen threw plaintiff into a metal bar and concrete wall and once plaintiff was on his

4   stomach Hurte put his full weight on plaintiff's legs while Vangerwen straddled plaintiff and

5   dislocated his left arm.  ECF No. 4 at 12; ECF No. 11 at 7.  Once plaintiff was in handcuffs,

6   Vangerwen put his knee on plaintiff's neck until plaintiff lost consciousness.  Id.  When plaintiff

7   regained consciousness, Hurte repeatedly kneed him in the testicles and Jurkiewicz kicked

8   plaintiff in the head.  Id.  Vangerwen then began yelling "DO YOU WANT MEDICAL

9   ATTENTION!" to which plaintiff repeatedly answered "yes."  Id.  During the subsequent escort

10  to medical, Hurte slammed plaintiff's forehead into a concrete pillar.  Id.  Plaintiff was escorted

11  back from medical without incident.  ECF No. 11 at 8.

12          Defendants assert that Hurte responded to a call for additional officers, and upon his

13  arrival witnessed deputies fighting with an inmate next to plaintiff's cell.  DSUF ¶ 45-46.  Hurte

14  further observed plaintiff yelling and instigating the inmate to continue fighting and causing other

15  inmates in the unit to yell, kick their doors, and further instigate the fight.  DSUF ¶ 48.  In

16  response to plaintiff's conduct, Vangerwen gave him three direct orders to get away from his

17  window and sit on his bunk, but plaintiff did not comply and instead continued instigating,

18  yelling, and encouraging other inmates to do the same.  DSUF ¶ 49.  Fearing the escalating

19  conduct would cause another fight, Hurte also gave plaintiff three orders to get away from his

20  window and sit down, which he refused to do.  DSUF ¶ 50.

21          After the other inmate was under control and had been moved away from plaintiff's door,

22  Vangerwen and another deputy gave plaintiff several orders to stop yelling and get way from his

23  window, but plaintiff did not comply and began insisting he needed immediate medical attention.

24  DSUF ¶¶ 51-52.  In response to plaintiff's request, deputies entered his cell to escort him to

25  medical for evaluation and Vangerwen gave plaintiff several direct orders to kneel on his bunk

26  and face away from deputies, which he eventually did.  DSUF ¶¶ 52-53.  Hurte and another

27  deputy gave plaintiff several direct orders to put his hands on his head, which plaintiff ignored

28  before suddenly turning toward Hurte.  DSUF ¶ 54.  Hurte took control of plaintiff's left arm

10

while the other deputy took control of plaintiff's legs.  DSUF ¶ 55.  Once plaintiff was on the floor, Hurte gave plaintiff several direct orders to place his hands on his head, and when plaintiff did not comply Hurte pulled plaintiff's hands to the back of his head and placed handcuffs on his wrists.  DSUF ¶ 56.  Hurte and the other deputy then assisted plaintiff to a standing position and escorted him to medical for evaluation.  DSUF ¶ 57.  After plaintiff was cleared to return to the housing unit, Hurte and Jurkiewicz escorted him back to his cell.  DSUF ¶¶ 57-58.

### D.   Retaliation

Plaintiff asserts that after filing several lawsuits against jail deputies, defendants Lockwood, Hurte, and Jurkiewicz made a habit of going into his cell and destroying his property, taking items, and distributing his legal work to other inmates.  ECF No. 11 at 9.  Defendants assert there is no evidence of retaliation and plaintiff was not able to provide specific dates for the any alleged retaliatory action.  DSUF ¶ 66.

### E.   Conditions of Confinement

Plaintiff states that he observed Vangerwen chip flaked feces off doors into plaintiff's food, remove portions of plaintiff's food, and tell other inmates to spit in his food.  ECF No. 11 at 9.  Defendants assert that plaintiff has no evidence to support his allegations and that he was not able to provide specific dates when such incidents occurred.  DSUF ¶ 67.

### F.   Grievances

Plaintiff filed multiple grievances while at the Shasta County Jail, including grievances regarding his claims that defendants used excessive force on October 11 and November 21, 2019.  DSUF ¶¶ 70, 72.  He also filed a grievance regarding a failure to provide medical care and two grievances about food being removed from his trays.  DSUF ¶ 74.

## VII.   Discussion

### A.   Failure to Exhaust

Because plaintiff is a prisoner suing over the conditions of his confinement, his claims are subject to the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a).  Under the PLRA, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until

11

1   such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a); <u>Porter v.</u>

2   <u>Nussle</u>, 534 U.S. 516, 520 (2002) ("§ 1997e(a)'s exhaustion requirement applies to all prisoners

3   seeking redress for prison circumstances or occurrences").  "[T]hat language is 'mandatory': An

4   inmate 'shall' bring 'no action' (or said more conversationally, may not bring any action) absent

5   exhaustion of available administrative remedies."  <u>Ross v. Blake</u>, 578 U.S. 632, 638 (2016)

6   (quoting <u>Woodford v. Ngo</u>, 548 U.S. 81, 85 (2006)).

7        Failure to exhaust is "an affirmative defense the defendant must plead and prove."  <u>Jones</u>

8   <u>v. Bock</u>, 549 U.S. 199, 204, 216 (2007).  "[T]he defendant's burden is to prove that there was an

9   available administrative remedy, and that the prisoner did not exhaust that available remedy."

10   <u>Albino v. Baca</u>, 747 F.3d 1162, 1172 (9th Cir. 2014) (en banc) (citing <u>Hilao v. Estate of Marcos</u>,

11   103 F.3d 767, 778 n.5 (9th Cir. 1996)).  "[T]here can be no 'absence of exhaustion' unless *some*

12   relief remains 'available.'"  <u>Brown v. Valoff</u>, 422 F.3d 926, 936 (9th Cir. 2005) (emphasis in

13   original).  Therefore, the defendant must produce evidence showing that a remedy is available "as

14   a practical matter," that is, "it must be capable of use; at hand."  <u>Albino</u>, 747 F.3d at 1171

15   (citation and internal quotations marks omitted).  "[A]side from [the unavailability] exception, the

16   PLRA's text suggests no limits on an inmate's obligation to exhaust—irrespective of any 'special

17   circumstances.'"  <u>Ross</u>, 578 U.S. at 639.  "[M]andatory exhaustion statutes like the PLRA

18   establish mandatory exhaustion regimes, foreclosing judicial discretion."  <u>Id.</u> (citation omitted).

19        For exhaustion to be "proper," a prisoner must comply with the prison's procedural rules,

20   including deadlines, as a precondition to bringing suit in federal court.  <u>Woodford</u>, 548 U.S. at 90

21   ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural

22   rules.").  "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of

23   proper exhaustion."  <u>Jones</u>, 549 U.S. at 218; <u>see also</u> <u>Marella v. Terhune</u>, 568 F.3d 1024, 1027

24   (9th Cir. 2009) ("The California prison system's requirements 'define the boundaries of proper

25   exhaustion'" (quoting <u>Jones</u>, 549 U.S. at 218)).

26        Defendants argue that plaintiff's claims based on the denial of medical care, retaliation,

27   and food tampering must be dismissed because plaintiff failed to exhaust his administrative

28   remedies.  ECF No. 63 at 18-20.  In response, plaintiff argues that he did exhaust his

1   administrative remedies and that the administrative grievance process was largely unavailable

2   because staff threatened him when he filed grievances or tampered with the grievances.  ECF No.

3   71 at 10-11.

4        To support their assertion that plaintiff failed to exhaust his administrative remedies,

5   defendants submit the declaration of Sgt. Tanner.  ECF No. 63-7.  However, though the

6   declaration establishes that a grievance process existed as a general matter, it fails to outline the

7   grievance process, address what information inmates were required to include, or explain what

8   constituted a properly exhausted grievance.  Id.  Accordingly, even if, as defendants argue, the

9   medical care grievance and two grievances about food being removed from plaintiff's tray were

10  vague as to who was responsible for the complained of conduct and do not mention any of the

11  defendants, defendants have not established that plaintiff was required to identify the officers

12  about whose conduct he complained.  Furthermore, even if the court assumes plaintiff was

13  required to provide such information, Tanner's declaration does not specify that the three

14  grievances related to medical care and missing food were the only grievances plaintiff submitted

15  on those issues or establish how Tanner determined what grievances plaintiff did and did not file.[4]

16  See ECF No. 63-7 at ¶¶ 3-5, 15-16.  Finally, though the declaration states that plaintiff's

17  grievances regarding the removal of food did not make any allegation about feces being placed on

18  his tray, it does not state that he did not file any separate grievances making such an allegation

19  and is silent as to whether plaintiff filed any grievances related to the retaliatory destruction of his

20  property.  See id.

21       For all these reasons, defendants have failed to meet their burden of demonstrating that

22  plaintiff failed to exhaust his administrative remedies and the motion should be denied on this

23  ground.

24  ////

25  ////

26

27  _____
    [4]  How Tanner determined what grievances plaintiff filed is particularly relevant in light of
28  plaintiff's sworn statement in his opposition that jail staff routinely convert grievances to requests
    after they have been submitted.  ECF No. 71 at 11.

13

1        B.        Excessive Force

2                1.        Heck Bar

3        "[A] state prisoner's claim for damages is not cognizable under 42 U.S.C. § 1983 if 'a

4    judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or

5    sentence,' unless the prisoner can demonstrate that the conviction or sentence has previously been

6    invalidated." Edwards v. Balisok, 520 U.S. 641, 643 (1997) (quoting Heck, 512 U.S. at 487).

7    "But if the district court determines that the plaintiff's action, even if successful, will *not*

8    demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action

9    should be allowed to proceed." Heck, 512 U.S. at 487.  "In evaluating whether claims are barred

10   by Heck, an important touchstone is whether a § 1983 plaintiff could prevail only by negating 'an

11   element of the offense of which he has been convicted.'" Cunningham v. Gates, 312 F.3d 1148,

12   1153-54 (9th Cir. 2002) (quoting Heck, 512 U.S. at 487 n.6).  "When the conviction is based on a

13   guilty plea, we look at the record to see which acts formed the basis for the plea." Lemos v.

14   County of Sonoma, 40 F.4th 1002, 1006 (9th Cir. 2022) (en banc) (citations omitted).  It is the

15   defendant's burden to establish the basis for the conviction.  Sanford v. Motts, 258 F.3d 1117,

16   1119 (9th Cir. 2001) ("It was the burden of the defendants to establish their defense by showing

17   what the basis was.").

18       Defendant Lockwood argues that plaintiff's claims regarding his use of force on October

19   11, 2019, are barred by Heck because plaintiff pled no contest to assault in violation of Penal

20   Code § 245(c) and success on the merits of his excessive force claim would necessarily imply the

21   invalidity of the conviction.  ECF No. 63 at 22-23.  California Penal Code 245(c) provides that

22               [a]ny person who commits an assault . . . by any means likely to
                 produce great bodily injury upon the person of a peace officer . . .,
23               and who knows or reasonably should know that the victim is a peace
                 officer . . . engaged in the performance of his or her duties, when the
24               peace officer . . . is engaged in the performance of his or her duties,
                 shall be punished by imprisonment in the state prison for three, four,
25               or five years.

26   "However, it is also a 'well-established rule that when a statute makes it a crime to commit any

27   act against a peace officer engaged in the performance of his or her duties, part of the *corpus*

28   *delicti* of the offense is that the officer was acting lawfully at the time the offense was

                                          14

committed." <u>People v. Cruz</u>, 44 Cal. 4th 636, 673 (2008) (citation omitted). "California courts have held that an officer who uses excessive force is acting unlawfully and therefore is not engaged in the performance of his or her duties." <u>Lemos</u>, 40 F.4th at 1006 (citations omitted).

In arguing that <u>Heck</u> bars plaintiff's claim, Lockwood fails to establish the factual basis for plaintiff's plea and makes only a general assertion that it was based on "the assault and attack of Deputy Lockwood which occurred during the subject incident on October 11, 2019." DSUF ¶ 76. Without the specific factual basis for the plea, the court is unable to assess whether success on the merits of plaintiff's excessive force claim would necessarily imply the invalidity of his conviction, and defendant has failed to meet his burden of showing that plaintiff's claim is barred. Moreover, plaintiff argues that <u>Heck</u> does not bar his claim because the plea agreement was based upon the altercation and fall down the stairs, while his complaint is based on Lockwood's subsequent conduct. ECF No. 71 at 4.

Assuming that the assault conviction was based on the altercation on the stairs and Lockwood falling down the stairs, plaintiff's conviction and claim of excessive force are not mutually exclusive. Finding that Lockwood responded to the assault with excessive force, and was therefore acting unlawfully, would not negate any of the elements of assault on a peace officer because it would not establish that Lockwood was acting unlawfully during his interaction with plaintiff on the stairs. <u>See</u> <u>Sanford v. Motts</u>, 258 F.3d 1117, 1120 (9th Cir. 2001) ("Excessive force used after an arrest is made does not destroy the lawfulness of the arrest."); <u>Guy v. City of San Diego</u>, 608 F.3d 582, 589 (9th Cir. 2010) ("[E]ven when police officers reasonably must take forceful actions in response to an incident, and even when such forceful actions are permissible at first, if the officers go too far by unnecessarily inflicting force and pain after a person is subdued, then the force, unnecessary in part of the action, can still be considered excessive."). Accordingly, <u>Heck</u> does not bar the excessive force claim against Lockwood and the motion for summary judgment should be denied on this ground.

2.   <u>Objective Reasonableness</u>

"The Fourteenth Amendment, and not the Eighth Amendment, governs cruel and unusual punishment claims of pretrial detainees." <u>Byrd v. Maricopa Cnty. Bd. Of Supervisors</u>, 845 F.3d

919, 924 n.2 (9th Cir. 2017).  "[T]he Fourteenth Amendment is more protective than the Eighth Amendment 'because the Fourteenth Amendment prohibits *all* punishment of *pretrial detainees*, while the Eighth Amendment only prevents the imposition of *cruel and unusual* punishment of *convicted prisoners*.'"  Vazquez v. County of Kern, 949 F.3d 1153, 1163-64 (9th Cir. 2020) (quoting Demery v. Arpaio, 378 F.3d 1020, 1029 (9th Cir. 2004)).  Under the Fourteenth Amendment, "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable."  Kingsley v. Hendrickson, 576 U.S. 389, 396-97 (2015).  "[O]bjective reasonableness turns on the 'facts and circumstances of each particular case' and must be determined "from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight."  Id. at 397 (quoting Graham v. Connor, 490 U.S. 386, 396 (1989)).

> Considerations such as the following may bear on the reasonableness or unreasonableness of the force used: the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

Id. at 397.

Excessive force cases often turn on credibility determinations, and "[the excessive force inquiry] nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom."  Smith v. City of Hemet, 394 F.3d 689, 701 (9th Cir. 2005) (en banc) (alteration in original) (quoting Santos v. Gates, 287 F.3d 846, 853 (9th Cir. 2002)).  Therefore, "summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly."  Id. (quoting Santos, 287 F.3d at 853).  The Ninth Circuit has "held repeatedly that the reasonableness of force used is ordinarily a question of fact for the jury."  Liston v. County of Riverside, 120 F.3d 965, 976 n.10 (9th Cir. 1997) (citations omitted).

In this case, the parties' versions of events on both October 11 and November 19, 2019, are clearly at odds.  As plaintiff concedes, if defendants' versions of the events are taken as true, their uses of force appear to have been reasonable.  See ECF No. 71 at 5.  However, plaintiff explicitly disputes defendants' versions of the events and, taking plaintiff's version of events as

true, defendants' uses of force on both dates were excessive because at the time the force was

exerted, plaintiff was not offering any resistance and force was used solely for the purpose of

causing plaintiff harm.  Though defendants have submitted video evidence to support their

position, as discussed below, the video evidence does nothing to resolve the disputed facts.

Plaintiff asserts that on October 11, 2019, he stopped resisting once deputies had him on

the floor and allowed himself to be handcuffed, but Lockwood repeatedly wrenched his arms

behind his back despite plaintiff's compliance.  ECF No. 11 at 5; ECF No. 71 at 3.  While two of

the videos submitted by defendants clearly show that plaintiff initially resisted officers, the

portion of the incident where plaintiff was held down and handcuffed by Lockwood with the

assistance of other deputies notably occurs outside the frame of both videos.  Exhibit I at 1:20-

1:40, Exhibit J at 1:19-1:40.[5]  Other deputies can be seen responding and standing at the edge of

the video frame, presumably next to where plaintiff was being secured.  Exhibit I at 1:40-3:00,

Exhibit J at 1:49-2:58.  However, plaintiff does not reappear on either video until he is back on

his feet and being escorted out of the housing unit.  Exhibit J at 2:58-3:05.  After that, plaintiff is

not seen again until he is being escorted back to his cell, Exhibit I at 8:30-8:43, Exhibit J at 8:28-

8:32; at which point the video shows plaintiff and seven deputies entering his cell with the

deputies beginning to exit about one minute later, Exhibit I at 8:43-10:00.  There is no video of

what occurred in plaintiff's cell, where plaintiff alleges Lockwood and Vangerwen threw him into

his concrete bunk and bent his arms, fingers, and legs until they felt like they would break.  ECF

No. 4 at 9; ECF No. 11 at 5.

The other two videos depicting portions of plaintiff's escort to and from medical show

what appears to be a reasonably conducted escort.  Exhibit K at 3:05-3:09, 8:18-8:21; Exhibit L at

3:50-4:02, 7:26-7:40.  However, there is no context provided for the videos demonstrating as a

matter of undisputed fact that there are no blind spots or missing portions of the escort, and the

videos therefore fail to disprove plaintiff's claim that he was shoved into doors and walls on the

---

[5]  Defendants submitted six videos in support of their motion for summary judgment which are
identified as Exhibits I through N and are available at
https://www.manningkass.com//manning/index.cfm/newsroom/video-details/?pkid=2447.  ECF
No. 63-3 at 69.

way to medical.  Defendants provide no video regarding plaintiff's second escort that day, and the court must therefore accept as creating a triable issue plaintiff's assertion that Lockwood and Vangerwen threw him into walls and doors during the escort and, upon returning him to his cell, threw him on the ground and beat him while he was fully restrained.  ECF No. 4 at 10; ECF No. 11 at 5-6.

With respect to the alleged use of force on November 21, 2019, plaintiff alleges that Hurte, Vangerwen, and Jurkiewcz assaulted him in his cell, ECF No. 4 at 11-12, ECF No. 11 at 7; and there is no video of what occurred in plaintiff's cell.  Similarly, though the videos briefly show plaintiff being escorted out of and back into the housing unit, Exhibit M at 9:35-9:59, Exhibit N at 0:23-0:29; there is no further video of plaintiff's escort that would definitively prove that Hurte did not slam plaintiff's head into a concrete pillar at some point during the escort as plaintiff claims, ECF No. 11 at 7.

Because the factual disputes are material to deciding whether defendants use of force was excessive and turn on credibility determinations that are the province of a jury, summary judgment is not appropriate and defendants' motion should be denied on this ground.

C.      Deliberate Indifference to a Serious Medical Need

"[C]laims for violations of the right to adequate medical care 'brought by pretrial detainees against individual defendants under the Fourteenth Amendment' must be evaluated under an objective deliberate indifference standard."  Gordon v. County of Orange, 888 F.3d 1118, 1124-25 (9th Cir. 2018) (quoting Castro v. County of Los Angeles, 833 F,3d 1060, 1070 (9th Cir. 2016)).  The elements of a Fourteenth Amendment medical care claim are:

> (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries.

Id. at 1125.

The defendants argue that plaintiff cannot show that they made an intentional decision

18

regarding how to handle plaintiff's medical complaints, that those decisions placed him at substantial risk of serious harm, or that he suffered actual harm because the uncontroverted evidence shows he was provided the care he needed.[6]  ECF No. 63-1 at 27.  Defendants rely on Lockwood's report regarding the incident to establish that plaintiff was examined and provided appropriate care when he was seen by medical.  See ECF No. 63 at 27 (citing DSUF ¶ 27).  However, plaintiff's declaration and first amended complaint state that even though Lockwood and Vangerwen took plaintiff to medical on October 11, 2019, once there they told medical staff not to evaluate his injuries and medical staff followed those instructions.  ECF No. 4 at 9; ECF No. 11 at 5.  Plaintiff's sworn statements further establish that he suffered actual harm because he asserts that due to this interference, he had to re-set his dislocated shoulder himself and was unable to use his hand two days after the incident.  Id.  To the extent defendants attempt to rely on plaintiff's deposition testimony to establish that he was provided the care he required, see DSUF ¶ 27 (citing PL's Depo. at 49:20-25, 50:16-18), review of the transcript shows that plaintiff testified that he did not specifically recall what occurred on October 11, 2019, but that medical staff routinely cleared inmates at the direction of deputies regardless of any injuries sustained.  ECF No. 63-3 at 34-35 (PL's Depo. at 49:3-50:25).

For these reasons, there is a dispute of fact as to whether defendants Lockwood and Vangerwen deliberately interfered with plaintiff's medical treatment, leading to additional suffering from his untreated injuries, and summary judgment is not appropriate on as to this claim.

          D.    Conditions of Confinement

The Due Process Clause prohibits punishment of pretrial detainees, which can be shown by "an expressed intent to punish" or inferred where the challenged condition "is not reasonably related to a legitimate goal" or "is arbitrary or purposeless."  Bell v. Wolfish, 441 U.S. 520, 535,

---

[6]  Defendants argue that they did not deny plaintiff medical care with respect to both incidents on October 11, 2019, and with respect to the incident on November 21, 2019.  ECF No. 63 at 27.  However, the first amended complaint alleged a denial of medical care only as to the first incident on October 11, 2019.  ECF No. 11 at 5.  The court will therefore consider only those arguments related to the alleged denial of medical care related to the first incident on October 11, 2019.

538-39 (1979).  Furthermore, the Eighth Amendment, which provides "a minimum standard of care for determining [pretrial detainees'] rights," <u>Or. Advoc. Ctr. v. Mink</u>, 322 F.3d 1101, 1120 (9th Cir. 2003); requires jails provide food "adequate to maintain health," and "[f]ood that is spoiled . . . would be inadequate to maintain health," <u>Keenan v. Hall</u>, 83 F.3d 1083, 1091 (9th Cir. 1996) (citations omitted).

Defendant Vangerwen argues that there is no evidence he placed feces on plaintiff's food tray, told inmates to spit in plaintiff's food, or removed food from plaintiff's tray and that plaintiff was not able to provide any specific dates on which the incidents occurred.  ECF No. 63 at 31. However, plaintiff's verified complaint states that he "observed" Vangerwen contaminating his food and removing food from his tray and this is sufficient to constitute evidence of the alleged conduct.  ECF No. 11 at 9.  That he is unable to identify any specific dates goes to his credibility, not to the sufficiency of the evidence.  <u>See</u> <u>Dominguez-Curry v. Nev. Transp. Dep't</u>, 424 F.3d 1027, 1039 (9th Cir. 2005) (plaintiff not required to provide specific dates of discriminatory conduct and while factfinder can conclude "plaintiff's account is insufficiently detailed to be believable, the district court must refrain from making such credibility assessments on summary judgment").  Deliberately contaminating or shorting a prisoner's food "is not reasonably related to a legitimate goal" and the court can infer no purpose of such conduct other than to punish plaintiff.  Accordingly, there exists a material issue of fact as to whether Vangerwen contaminated and removed food from plaintiff's tray and summary judgment should be denied.

E.     <u>Retaliation</u>

> Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal.

<u>Rhodes v. Robinson</u>, 408 F.3d 559, 567-68 (9th Cir. 2005) (citations and footnote omitted).  "To prevail on a retaliation claim, a plaintiff must show that his protected conduct was 'the "substantial" or "motivating" factor behind the defendant's conduct.'"  <u>Brodheim v. Cry</u>, 584 F.3d 1262, 1271 (9th Cir. 2009) (quoting <u>Soranno's Gasco, Inc. v. Morgan</u>, 874 F.2d 1310, 1314

1  (9th Cir. 1989)).

2      "To raise a triable issue as to motive, [a plaintiff] must offer 'either direct evidence of

3  retaliatory motive or at least one of three general types of circumstantial evidence [of that

4  motive].'" McCollum v. Cal. Dep't Corr. & Rehab., 647 F.3d 870, 882 (9th Cir. 2011) (second

5  alteration in original) (quoting Allen v. Iranon, 283 F.3d 1070, 1077 (9th Cir. 2002)).

6  Circumstantial evidence of motive may include (1) the proximity in time between the protected

7  conduct and the alleged retaliation; (2) the defendant's expressed opposition to the protected

8  conduct; and (3) other evidence showing that the defendant's reasons for the challenged action

9  were false or pretextual. Id. (quoting Allen v. Iranon, 283 F.3d 1070, 1077 (9th Cir. 2002)).

10  "[M]ere speculation that defendants acted out of retaliation is not sufficient." Wood v. Yordy,

11  753 F.3d 899, 905 (9th Cir. 2014) (citations omitted).

12      Defendants Lockwood, Hurte, and Jurkiewicz argue that plaintiff's retaliation claim must

13  be dismissed because there is no evidence of retaliation and plaintiff was not able to provide

14  specific dates of the alleged retaliation. ECF No. 63 at 29. In response, plaintiff argues that

15  evidence of defendants' retaliation exists, but was withheld from plaintiff during discovery. ECF

16  No. 71 at 8.

17      The verified complaint alleges that defendants "made a habit" out of routinely going into

18  plaintiff's cell and destroying his property. ECF No. 11 at 8-9. This sworn statement constitutes

19  evidence and is sufficient to establish the adverse conduct element of plaintiff's retaliation claim.

20  See Lopez, 203 F.3d at 1132 n.14 (verified complaint may be considered an affidavit in

21  opposition to summary judgment if based on personal knowledge and sets out specific facts).

22  However, assuming defendants acted as plaintiff alleges, plaintiff fails to come forth with either

23  direct or circumstantial evidence demonstrating that defendants' conduct was motivated by his

24  protected conduct.

25      Although plaintiff asserts that defendants' conduct began "[a]fter filing several lawsuits,"

26  ECF No. 11 at 8, this bare assertion fails to establish sufficient proximity between plaintiff's

27  protected conduct and the alleged retaliation to constitute circumstantial evidence of motive.

28  Moreover, circumstantial evidence must be "specific" and "substantial" to overcome a motion for

1   summary judgment, <u>Stegall v. Citadel Broad. Co.</u>, 350 F.3d 1061, 1066 (9th Cir. 2003) (citation

2   omitted), and neither the opposition nor the amended complaint offer any specific and substantial

3   circumstantial evidence that would establish defendants' motivation.  Although plaintiff claims

4   that he was denied the evidence necessary to prove his claim, as addressed above in Section V.B,

5   he has failed to explain why he was unable to file a motion to compel or otherwise obtain the

6   discovery he now claims was withheld from him, and no further discovery is warranted.

7        Because plaintiff has failed to come forward with evidence to support his claim that

8   defendants' actions were motivated by his protected conduct, summary judgment should be

9   granted as to plaintiff's retaliation claim.

10             F.    <u>Qualified Immunity</u>

11        "[G]overnment officials performing discretionary functions generally are shielded from

12   liability for civil damages insofar as their conduct does not violate clearly established statutory or

13   constitutional rights of which a reasonable person would have known."  <u>Harlow v. Fitzgerald</u>, 457

14   U.S. 800, 818 (1982) (citations omitted).  In analyzing a qualified immunity defense, the court

15   must consider the following: (1) whether the alleged facts, taken in the light most favorable to the

16   plaintiff, demonstrate that defendant's conduct violated a statutory or constitutional right; and (2)

17   whether the right at issue was clearly established at the time of the incident.  <u>Saucier v. Katz</u>, 533

18   U.S. 194, 201 (2001), <u>overruled in part by</u> <u>Pearson v. Callahan</u>, 555 U.S. 223, 236 (2009)

19   (overruling <u>Saucier's</u> requirement that the two prongs be decided sequentially).  "[S]ummary

20   judgment based on qualified immunity is improper if, under the plaintiff's version of the facts,

21   and in light of the clearly established law, a reasonable officer could not have believed his

22   conduct was lawful."  <u>Schwenk v. Hartford</u>, 204 F.3d 1187, 1196 (9th Cir. 2000) (citing

23   <u>Grossman v. City of Portland</u>, 33 F.3d 1200, 1208 (9th Cir. 1994)).

24        With respect to plaintiff's retaliation claim, because the facts taken in the light most

25   favorable to plaintiff do not show the violation of a constitutional right, it is not necessary for the

26   court to address Lockwood, Hurte, and Jurkiewicz argument that they are entitled to qualified

27   immunity as to that claim and the court declines to do so.

28        As for plaintiff's remaining claims, the court has determined that under plaintiff's version

1    of the facts, the allegations demonstrate defendants used excessive force, denied plaintiff medical

2    care, and tampered with plaintiff's food in violation of plaintiff's rights under the Fourteenth

3    Amendment, and the first prong is therefore resolved in plaintiff's favor as to these claims.  With

4    respect to whether these rights were clearly established at the time, the undersigned finds that

5    they were.  Crediting plaintiff's version of events, defendants used significant force on him,

6    interfered with his medical care, and tampered with his food for no other reason than to punish

7    and harass plaintiff.  Given the allegedly deliberate nature of defendants' conduct, no reasonable

8    officer in their position would have believed such conduct was lawful as it was clearly established

9    that pretrial detainees could not be punished.  See Bell, 441 U.S. at 535, 538-39 (1979) (Due

10   Process Clause prohibits punishment of pretrial detainees which can be shown by "expressed

11   intent to punish" or inferred where "condition is not reasonably related to a legitimate goal").  It

12   was also clearly established that it was unconstitutional to use force solely for the purpose of

13   inflicting harm, to interfere with medical treatment, and to provide contaminated or inadequate

14   food.  See Hudson v. McMillian, 503 U.S. 1, 6-7 (1992) (force is excessive under Eight

15   Amendment if used "maliciously and sadistically to cause harm" (citation omitted)); Hallett v.

16   Morgan, 296 F.3d 732, 744 (9th Cir. 2002) (under Eighth Amendment "[p]rison officials are

17   deliberately indifferent to a prisoner's serious medical needs when they . . . intentionally interfere

18   with medical treatment." (citation and internal quotation marks omitted)); Keenan, 83 F.3d at

19   1091 (9th Cir. 1996) (Eighth Amendment requires food "adequate to maintain health" and "[f]ood

20   that is spoiled . . .  would be inadequate to maintain health" (citations omitted)).  Because the

21   Fourteenth Amendment is even more protective of inmate rights than the Eighth Amendment,

22   those principles apply with even greater force here.  See Or. Advoc. Ctr., 322 F.3d at 1120 (9th

23   Cir. 2003) ("[E]ven though the pretrial detainees' rights arise under the Due Process Clause, the

24   guarantees of the Eighth Amendment provide a minimum standard of care for determining their

25   rights").

26         For these reasons, the motion for summary judgment should be denied on the grounds of

27   qualified immunity.

28   ////

VIII.   Conclusion

For the reasons set forth above, defendants' motion for summary judgment should be granted as to plaintiff's retaliation claim against defendants Lockwood, Hurte, and Jurkiewicz and denied as to all other claims.

IX.   Plain Language Summary of this Order for a Pro Se Litigant

This court is recommending that the defendants' motion for summary judgment be granted as to your retaliation claim because even if the court assumes that defendants Lockwood, Hurte, and Jurkiewicz destroyed your property, you have not provided any evidence that their conduct was motivated by your protected conduct.  It is being recommended that the motion for summary judgment be denied as to all other claims.

CONCLUSION

Accordingly, IT IS HEREBY ORDERED that:

1.   Defendants' request for judicial notice (ECF No. 63-1) is GRANTED; and

2.   Plaintiff's motion for relief under Federal Rule of Civil Procedure 56(d) (ECF No. 71 at 8-9) is DENIED.

IT IS FURTHER RECOMMENDED that:

1.   Defendants' motion for summary judgment (ECF No. 63) be GRANTED in part and DENIED in part as follows:

a.   DENIED as to plaintiff's excessive force, deliberate indifference, and food tampering claims; and

b.   GRANTED as to plaintiff's retaliation claim.

2.   This case proceed on the claims for excessive force against defendants Lockwood, Vangerwen, Hurte, and Jurkiewicz; deliberate indifference against Lockwood and Vangerwen; and unconstitutional conditions of confinement against Vangerwen.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned

24

"Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: September 20, 2023

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE